# Republic-Odin Appliance Corp. v. Consumers Plumbing and Heating Supply Co.

*Walter A. Dart, Jr.,* for plaintiff.

*David S. Gifford* and *Oscar J. Green,* for defendant.

LAUB, J., June 23, 1961.—This is an action in assumpsit on an open book account for the purchase price of goods sold and delivered. The case was tried before us without jury and it is now necessary that we render our decision.

From the evidence before us we make the following

## Findings of Fact

1. Plaintiff is a Pennsylvania corporation having its principal place of business in Erie, Pennsylvania, and is engaged in the manufacture of water heaters and related items for sale to suppliers.

2. Defendant is a Pennsylvania corporation having its principal place of business in Erie, Pennsylvania, but conducts much of its business from the office of its president in Cleveland, Ohio.

3. Defendant's president is Richard Friedman of Cleveland, Ohio, who is also president of an Ohio corporation having the identical name as defendant. Both corporations are engaged in the retail sale of water heaters and related items and in neither case does the name of the company reveal its charter origin.

Defendant's business in Pennsylvania is managed by Albert B. Cole who is authorized to contract for, order and receive merchandise from suppliers for the purpose of resale by defendant in the course of its business. He has no general authority to bind the Ohio corporation by contract.

5. Defendant has a printed form of purchase order which bears the name "Consumers Plumbing and Heating Co., 130 W. 13th Street", and lists Cleveland, Toledo and Akron, Ohio, as alternative addresses. All of defendant's purchase-order forms indicate Erie, Pennsylvania, as the place of origin and bear the direction "Mail Original Invoice to 5715 Euclid Ave., Cleveland, Ohio. Mail Duplicate Invoice to 130 W. 13th Street, Erie, Pa."

6. The Ohio corporation has branches in Toledo and Akron and conducts its business from the same office where a large portion of the Pennsylvania corporation business is transacted.

7. With the exception of petty cash transactions relating to routine matters essential to its operation, all financial matters of defendant corporation are handled in this fashion: (a) Funds locally received by the corporation are deposited in an Erie Bank; (b) corporate officers in Cleveland withdraw said funds from the Erie Bank and deposit them in one of two accounts which are maintained in Cleveland by the Ohio corporation and in which money belonging to Ohio corporation is comingled; (c) all merchandise purchased by the Pennsylvania corporation from suppliers for resale are paid out of one of the bank accounts maintained in

Cleveland; (d) the Ohio corporation carries the Pennsylvania corporation on its books as a debtor for all merchandise paid for out of the common account and credits the Pennsylvania company with any funds withdrawn from the Erie bank or paid directly to the Cleveland office; (e) all records pertaining to accounts payable to the Erie corporation and its payroll records are maintained in Cleveland; (f) the officers of the two corporations whose duties are interlocking, do not scrupulously maintain corporate integrity in the books of the two companies except such as may be required for tax purposes, and in all other respects the Pennsylvania corporation is treated and regarded by them as a branch operation of the Ohio company.

8. Plaintiff has had a long continued course of dealings with the Ohio corporation, its branches, and the Pennsylvania corporation, delivering, on order, merchandise to each entity and forwarding the original invoice to the Cleveland office designated on the purchase orders. In all cases involving sales to the Pennsylvania corporation the purchase orders were in the form described in finding of fact no. 5. In every case where sales were made, the duplicate invoice was sent by plaintiff to the home office of the particular entity which entered the order.

9. Plaintiff carried a single ledger account for all purchases made by the various corporate entities mentioned above, such account being carried in the name "Consumers Plumbing & Heating Company" without designation as to charter origin but bearing the notation of the Cleveland address to which original invoices were directed to be sent. A Dun & Bradstreet credit rating of the Ohio corporation was carried on the ledger account, however.

10. From March 4, 1958, until March 19, 1959, there was a series of transactions in which plaintiff sold and delivered merchandise to the defendant on the order of

Albert C. Cole, its manager. Upon the merchandise thus delivered there remains an unpaid balance of $4,507.98.*

11. There was a previously existing lawsuit in this court between the present plaintiff and Consumers Plumbing and Heating Co., of Ohio, at no. 382 September term, 1959, and in that action preliminary objections were filed by defendant and sworn to by Friedman, its president. The preliminary objections, which were in the nature of a petition raising the question of jurisdiction, were offered and received in evidence in this action to attack the credibility of Friedman as a witness. In those objections, Friedman averred that the Ohio company does not conduct any business in Pennsylvania and that A. B. Cole, who was served with process, was not an officer of the Ohio corporation nor an agent in charge of its usual place of business.

12. There was no express agreement between the parties with respect to the prices to be charged for goods sold by plaintiff to defendant, the understanding between the parties being that prices would be charged according to current catalogue listings.

13. The prices charged by plaintiff for the goods sold and delivered were fair and reasonable as of the time of delivery.

14. During the course of the transactions between the parties, deductions were made and credits taken by defendant's officers against plaintiff's billings, including price adjustments on items which defendant's officers felt were not according to catalogue. Certain of these deductions, credits and adjustments were ac-

---

* Plaintiff's claim is for $4,978.43, but of this, $470.45 represents an item ordered by the Ohio company for its own consumption. Although the item was picked up by the Pennsylvania corporation and delivered to Ohio, it is clear that the Pennsylvania corporation was merely acting for the convenience of the Ohio company and not for its own benefit. If plaintiff's theory of suit is correct, its claim must be reduced by $470.45.

cepted by plaintiff and others were rejected. The course thus taken between the parties did not establish a custom or usage contrary to the theory of plaintiff as to defendant's liability.

15. Plaintiff was induced to sell to defendant by reason of the credit established by the Ohio corporation, which, by inference, agreed to guarantee the obligations of defendant, but there was no agreement that the purchase price of the goods sold was to be the sole obligation of the Ohio company.

16. Defendant received the benefit of the goods sold and delivered to it and is primarily obligated to pay the reasonable value thereof.

### Discussion

Plaintiff proceeded in this case on the theory of quantum valebant, i.e., that there was an implied assumpsit in defendant to pay for goods sold and delivered to it. Since there was no set price for each item agreed upon, and no express contract other than a general understanding with respect to catalogue prices, plaintiff, if entitled to recover, can recover the reasonable value of the goods at the time of delivery: Uniform Commercial Code of April 6, 1953, P. L. 3, 12A PS §2-305.

There is only one question before us for disposition and that is whether the Ohio corporation (hereinafter to be referred to as "Ohio") was the purchaser of the goods in question or whether the purchaser was the Pennsylvania company (hereinafter to be referred to as "Pennsylvania"). Plaintiff's theory, upon which it depends for recovery, is that the goods were ordered and delivered by and for the sole benefit of Pennsylvania; that although Ohio was, in a sense, a guarantor of Pennsylvania's obligations, Ohio's obligation, if any, was secondary and not primary. It is plaintiff's view that it is not concerned with the bookkeeping ramifications of the two corporations, established solely for

their own convenience, but that it is entitled to be compensated for the sales made by it on order by Pennsylvania's authorized manager. Defendant, on the other hand, maintains that the goods were purchased by and for Ohio and that, according to its internal workings and understanding, Pennsylvania was a mere customer of Ohio; that this plan was understood and agreed to by plaintiff who refused to sell to Pennsylvania on its own credit but insisted upon the sales being made on Ohio's credit exclusively.

There can be no question but that there was an original understanding between the parties with repect to sales on Ohio's credit. Mr. Friedman, who is president of both Ohio and Pennsylvania, testified that at the outset of negotiations plaintiff would not sell to Pennsylvania without the privilege of billing Ohio for the goods according to a prior practice which obtained between the predecessors of both entities. Although plaintiff's present credit manager was not aware that Ohio and Pennsylvania were separate corporations, plaintiff's responsible officers must have been aware of it in order to have insisted upon the arrangement which Mr. Friedman claims was made, for otherwise the question of Pennsylvania's credit would not have been raised. Furthermore, plaintiff carried a Dun & Bradstreet credit rating of Ohio on its ledger account, thus indicating plaintiff's reliance on Ohio for ultimate payment of Pennsylvania's debts. The question therefore arises whether this arrangement insulated Pennsylvania against suit for goods sold and delivered to it for its sole benefit.

No particular significance can be attached to the circumstance that plaintiff carried its ledger account in the name "Consumers Plumbing & Heating Supply Co.", with the annexed Cleveland address, for regardless of the existence or nonexistence of the credit arrangement which defendant insists was made, the led-

ger account would probably have been carried in the same fashion. The ledger account did not designate the debtor as an Ohio corporation and the Cleveland address is not persuasive that the Ohio corporation was the sole obligor. Defendant's purchase orders designated the same Cleveland address as the place to send the original invoice and therefore, even if the Ohio corporation did not exist, it is more than likely that the ledger account would have been carried in precisely the identical fashion.

The defense offered is unusual. It is defendant's contention, on the one hand, that Pennsylvania is a separate corporation, independent and distinct from Ohio, and that Pennsylvania's manager had no power to order goods for or bind the Ohio company on any contract. This was the same defense offered in the preliminary objections filed in the previous case at no. 382 September term, 1959. On the other hand, defendant now contends that Pennsylvania's manager did, in effect, have the power to bind Ohio to a sales contract by reason of the credit arrangement already alluded to. In the dilemma thus presented, we are asked to say that although Pennsylvania ordered and received the goods by the authorized action of its manager, Pennsylvania is not obligated to pay for the goods because Ohio was, in fact, the purchaser according to the internal workings of the two companies, and because plaintiff, in the past, looked to Ohio for compensation rather than Pennsylvania. This problem would not have arisen had Ohio ordered the goods originally and directed plaintiff to deliver to Pennsylvania, for in such case the arrangement would have been clear that Pennsylvania was receiving the goods solely as a purchaser from Ohio and not from plaintiff. However, Pennsylvania and not Ohio ordered the merchandise. Pennsylvania and not Ohio received it and sold it on the retail market. Pennsylvania directed plaintiff to send the original invoice

to Cleveland, without specifying that a different corporation was to pay it, and compensation, other than in the present circumstances, was paid out of Cleveland from funds which, in part at least, belonged to Pennsylvania. The confusion, if any, was the result of the interlocking management of the two retail dispensers treating Pennsylvania as a branch of Ohio rather than as a separate corporation. For this, plaintiff cannot be held responsible.

At the most, the arrangement for sales on Ohio's credit was nothing more than oral guaranty relationship in which Ohio guaranteed Pennsylvania's obligation. Whether this was an original undertaking so as to take the matter out of the statute of frauds or whether it was such a promise to pay the default of another as to require a written agreement is not important, for Ohio is not a party defendant in this proceeding. It would seem to be a novel approach to insist that a guaranty to answer for another's debt insulates the original debtor against a recovery for goods had and received by it. We do not consider this to be the law. If a promisor is to become guarantor to the promisee for a debt, for which a third party is and continues to be primarily liable, the promisor may be relieved of liability on the basis of the statute of frauds but this in no way affects the liability of the original debtor.

### Conclusions of Law

1. Defendant is obligated to pay to plaintiff for the goods sold and delivered to it by plaintiff which have not been paid for.

2. Consumers Plumbing and Heating Supply Co., an Ohio corporation, orally guaranteed the debts of defendant in the premises but such guarantee did not relieve defendant of its obligation to pay for goods which it ordered and received on its own behalf.

3. Plaintiff is entitled to recover in this action against defendant.

4. Defendant shall pay the costs.

And now, to wit, June 23, 1961, the court sitting without a jury, under a valid stipulation filed by the parties hereto, finds for plaintiff against defendant, and it is decided and decreed as follows:

1. Judgment shall be entered in favor of plaintiff and against defendant in the amount of $4,507.98.

2. Defendant shall pay the costs.

The prothonotary is directed to enter this decision and to notify the parties or their attorneys of its filing and that unless exceptions thereto are filed within 30 days after service of such notice the decision will be entered as a final judgment herein.